# United States Court of Appeals
## For the First Circuit

No. 07-1682

EFRAÍN MORÁN VEGA,
Plaintiff, Appellant,

VIRGINIA POLO CUEVAS; CONJUGAL PARTNERSHIP MORÁN-POLO,
Plaintiffs,

v.

VICTOR R. CRUZ BURGOS; JANE DOE 03CV1902-1; CONJUGAL PARTNERSHIP
CRUZ-DOE; MYRNA CRESPO-SAAVEDRA; JOHN DOE 03CV1902, CONJUGAL
PARTNERSHIP DOE-CRESPO; JOSÉ CORDERO-SERRANO, Director of the
General Services of the Department of Human Resources; JANE DOE
03CV1902-3; CONJUGAL PARTNERSHIP CORDERO-DOE; FAUSTINO ACEVEDO-
CRUZ, Sub-Administrator of the Department of Labor for the
Commonwealth of Puerto Rico; JANE DOE 03CV1902-4; JOSÉ L. RIVERA;
JANE DOE 03CV1902-5; CONJUGAL PARTNERSHIP RIVERA-DOE; WILFREDO
RÍOS-SALDAÑA, Regional Director of the Department of Labor for
the Commonwealth of Puerto Rico; JANE DOE 03CV1902-6; CONJUGAL
PARTNERSHIP RÍOS-DOE; JESÚS ROHENA; MARÍA DEL CARMEN FUENTES;
ROMÁN M. VELASCO-GONZÁLEZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Marie Elsie López-Adames and Gonzáles-López & López-Adames
on brief for appellants.
Salvador J. Antonetti-Stutts, Solicitor General, Rosa Elena

Perez-Agosto, Assistant Solicitor General, Mariana D. Negrón-Vargas, Deputy Solicitor General, and Maite D. Oronoz-Rodríguez, Deputy Solicitor General, on brief for appellees.

———————————————

———————————————

**LYNCH**, <u>**Chief Judge**</u>.  Efraín Morán Vega, a regional manager of the Right to Work Administration ("RWA") of the Department of Labor for the Commonwealth of Puerto Rico, was suspended in December 2001 and threatened with firing.  He brought an administrative challenge and was reinstated in November 2005. In August 2003, some twenty months after he was notified of the suspension, Morán Vega, with his wife Virginia Polo Cuevas and their conjugal partnership, (collectively "Morán Vega") sued his superiors under 42 U.S.C. § 1983, alleging that his suspension was politically motivated and violated his rights under the First Amendment, and brought claims under state law.

The district court held the suit untimely and granted the defendants' motion to dismiss, entering a final judgment on March 13, 2006.  Morán Vega filed a motion for reconsideration, <u>see</u> Fed R. Civ. P. 59(e), arguing that his administrative filing tolled the statute of limitations and that the agency's delay in reinstating him constituted a continuing violation that extended the limitations period.  The district court issued an order on March 2, 2007 denying that motion for reconsideration.  We affirm.

I.

Morán Vega began working at the RWA on February 16, 1972. Taking his allegations as true for purposes of the Rule 12(b)(6) motion to dismiss, he was "openly known" as an active member of the New Progressive Party ("NPP").  In the 2000 election, the NPP lost

-3-

control of the government to its rival, the Popular Democratic Party ("PDP").

The defendants, public officials of the Department of Labor and supporters of the PDP,[1] set out to have Morán Vega's employment terminated because of his party membership. The new administration created the position of Regional Director, which was given supervisory authority over Morán Vega, and appointed a PDP member named Wilfredo Ríos-Saldaña to the role. This appointment was made to end Morán Vega's direct line of communication to the Administrator, María del Carmen Fuentes. Morán Vega was ordered to introduce Rios-Saldaña at a staff meeting as someone who could be trusted by the RWA's administrator. These actions demonstrated an "intention to humiliate" Morán Vega and created a hostile work environment.

On October 23, 2001, Morán Vega ordered the RWA's cleaning staff to clean a storage area and to remove inactive files from previous years. When he arrived at the office on the

---

[1] The defendants are Victor Cruz-Burgos, Secretary of the Department of Labor; Myrna Crespo-Saavedra, Director of Human Resources for the RWA; Faustino Acevedo-Cruz, Sub-Administrator of the Department of Labor; María del Carmen Fuentes, Administrator of the RWA; José Cordero-Serrano, Special Assistant to the Administrator; José L. Rivera, Executive Assistant to the Administrator; Wilfredo Ríos-Saldaña, Regional Director of the RWA; and Jesús Rohena, Supervisor of the RWA's Insurance and Unemployment Investigations Unit; and their respective conjugal partnerships. Acevedo-Cruz, Rivera, and Ríos-Saldaña were named in their official capacity; the other defendants were named in their individual and official capacities. Defendant Román M. Velasco-Gonzáles is the current Secretary of the Department of Labor.

-4-

scheduled cleaning date, November 2, 2001, Morán Vega found defendants José Rivera and Jesús Rohena waiting for him. Rivera, the Supervisor of the RWA's Insurance and Unemployment Investigations Unit, and Rohena, Special Assistant to the Administrator of the RWA, accused Morán Vega of illegally destroying public documents. They sealed the dumpster that the cleaning staff used and took photographs.

On December 3, 2001, Fuentes sent Morán Vega a letter formally accusing him of authorizing the destruction of documents from active files. The letter notified Morán Vega that his employment was suspended with pay and that the RWA intended to dismiss him.

Morán Vega requested an administrative hearing from the RWA on December 8, 2001. The agency initially denied receiving his request and referred him to an external appellate board but, when challenged, granted the request for hearing on December 27. The RWA notified Morán Vega on January 8, 2002 that his hearing would be held on January 25. Morán Vega objected to the initial examiner because he claimed she had a conflict of interest related to Fuentes. On November 15, 2002, Morán Vega was notified that a new examiner had been assigned to his case and that his hearing would be held on November 27. Morán Vega requested a new hearing date due to his attorney's illness. His hearing was eventually held on

December 19, 2002.  The agency did not issue a decision in the matter until November 9, 2005, when it reinstated him.

## II.

Morán Vega brought suit on August 21, 2003 under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, alleging violations of his First and Fourteenth Amendment rights, and bringing state law claims under the court's supplemental jurisdiction.  Morán Vega claimed that the defendants had created a "politically motivated environment" and suspended him because of his political beliefs, and he sought compensatory and punitive damages, declaratory and injunctive relief, and costs and attorney's fees.

On September 23, 2004, the district court entered an order adopting a magistrate judge's report and recommendation and granting a motion to dismiss filed by three of the defendants, Crespo-Saavedra, Acevedo-Cruz, and Rivera.  The court held the suit barred by the one-year statute of limitations applicable to Section 1983 claims in Puerto Rico and dismissed the claims with prejudice. The court concluded that the limitations period began running on December 3, 2001, when Morán Vega received notice of his suspension, and that he had failed to show that the agency's failure to reinstate him constituted a continuing violation, which would have brought his suit within the limitations period.  Morán Vega filed a motion for reconsideration on October 7, 2004 and a second motion for reconsideration on June 20, 2005.  The district

-6-

court denied the first motion and found the second moot on August 9, 2005. Morán Vega attempted to file an interlocutory appeal on September 7, 2005 but voluntarily dismissed it because the August 2005 order granting relief only to some defendants was not appealable.

In an order entered on March 19, 2006, the district court granted a separate motion to dismiss filed by the remaining defendants. Judgment was entered on March 19, 2006. No appeal was timely taken.

Plaintiffs filed a Rule 59(e) motion to alter or amend the judgment on March 30, 2006, and an "Informative Motion Regarding New Case Law" on May 25, which argued that an intervening change in the law had occurred, citing Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85 (1st Cir. 2006), decided on May 9, 2006.

The district court accepted the Rule 59(e) motion and informative motion as timely. The court treated both motions together and adjudicated the plaintiffs' request for reconsideration only under the intervening change of law standard.[2]

---

[2] Morán Vega raised additional arguments in this motion. He had raised identical arguments which were rejected before judgment issued. Those arguments were not proper for a motion for reconsideration under Rule 59(e). A district court is entitled to disregard arguments made in a Rule 59(e) motion that "could, and should, have been made before judgment issued." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008)(quoting FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)).

See <u>Hayes</u> v. <u>Douglas Dynamics, Inc.</u>, 8 F.3d 88, 90 n.3 (1st Cir. 1993); <u>see</u> <u>also</u> 11 Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 2810.1, at 124-27 (2d ed. 1995) (noting that a valid Rule 59(e) claim may be based, inter alia, on an intervening change in law). The court went over its prior holding, where it concluded that plaintiffs had failed to meet the requirement under Puerto Rico law that, to toll the statute of limitations, an administrative filing and a later suit must involve identical claims brought against identical "passive subjects," or defendants. The court concluded that neither the relief sought nor the defendants named were identical. The court held that <u>Valentín-Almeyda</u> in fact supported its ruling because that case turned on the fact that the plaintiff there, who brought an administrative action alleging sexual harassment as well as a later Title VII suit, <u>had</u> satisfied both requirements. The court also reviewed an earlier Puerto Rico case cited by the plaintiffs, <u>Ríos Quiñones</u> v. <u>Administracion de Servicios Agricolas</u>, 140 P.R. Dec. 868 (1996), finding it inapposite as well. In <u>Ríos</u>, the administrative claim and the suit had been brought against the same subjects. While <u>Ríos</u> had held that the limitations period began on the date a challenged transfer actually occurred rather than the date the plaintiff learned of it, the court noted that federal law, which determines the date of accrual in Section 1983 actions, differs. The court entered its order denying reconsideration on March 2,

2007, nearly a year after it had dismissed the case.  Morán Vega's notice of appeal, entered April 1, 2007, followed.

III.

Under Marie v. Allied Home Mortgage Corp., 402 F.3d 1 (1st Cir. 2005), we review both the order of dismissal and the denial of reconsideration.

Under Marie, we review whether the appeal is timely filed as to the underlying order for which reconsideration was sought and whether Morán Vega intended to appeal the underlying order or only the district court's ruling on the Rule 59(e) motion.

As we recognized in Marie, a timely filing of a Rule 59(e) motion tolls the thirty-day appeal period under Fed. R. App. P. 4(a)(4)(A).  Marie, 402 F.3d at 8 ("The thirty-day clock restarts after the order denying the motion to alter or amend the judgment.").  Here, Morán Vega timely filed the Rule 59(e) motion and filed the notice of appeal within thirty days of the district court's order denying the Rule 59(e) motion, making the appeal of the dismissal timely under Fed. R. App. P. 4(a)(4)(A).

Our second inquiry under Marie focuses on what the appellant actually intended to appeal.  Here, as in Marie, the notice of appeal named only the order denying Morán Vega's motion for reconsideration.  See Marie, 402 F.3d at 8.  Nonetheless, in determining what is actually being appealed, "we have been liberal."  Id.  We consider the appellant's intent on the record as

-9-

a whole and whether the appellant's unclear notice has misled the appellee. Id. Here, Morán Vega "manifested an intent, however awkwardly phrased, to appeal the underlying order" rather than merely the denial of the motion for reconsideration. Id. at 9; see also Zukowski v. St. Lukes Home Care Program, 326 F.3d 278, 283 n.4 (1st Cir. 2003). Further, appellees' brief also assumes that we would review the district court's decision to grant the motion to dismiss. See Marie, 402 F.3d at 9 n.5 (noting that any possible prejudice arising out of the appellee's being misled by a faulty notice of appeal was vitiated by her opportunity to file an additional brief on the merits).

Our review of the district court's granting of the motion to dismiss is de novo. Chmielinski v. Massachusetts, 513 F.3d 309, 314 (1st Cir. 2008). Morán Vega argues that the district court erred by "not tak[ing] into consideration the [allegation] that at least one discrete act had occurred within the statute of limitations," erred by failing to consider a purported retaliation claim, which was not time barred, and erred by relying on case law that was "clearly inapplicable" to conclude that Morán Vega's administrative filing did not toll the statute of limitations.

A.      The Continuing Violation Theory

Morán Vega argues that a discrete, discriminatory act -- namely the fact that the administrative claim was still pending -- occurred less than one year before suit was filed in August 2003,

-10-

and argues that this fact represents a continuing violation, which "rewinds the clock for each discriminatory act along the way."

Morán Vega's continuing violation theory is unavailing. Section 1983, which borrows its limitations period from state law, carries a one-year statute of limitations in Puerto Rico. Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008). It is federal law, however, which determines when the statute of limitations begins to run. Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). Section 1983 claims generally accrue "when the plaintiff knows, or has reason to know of the injury on which the action is based," id. (quoting Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994)), and a plaintiff is deemed to know or have reason to know "at the time of the act itself and not at the point that the harmful consequences are felt," id. at 6 (emphasis added). The clock thus began running, for purposes of section 1983, when Morán Vega received the letter notifying him of his suspension on December 3. See generally Del. State Coll. v. Ricks, 449 U.S. 250, 261-62 (1980) (holding that the statute of limitations in a Title VII case began to run when a university professor received notice that his tenure would be denied not when his employment ended one year later); accord Campbell v. BankBoston, N.A., 327 F.3d 1, 10-11 (1st Cir. 2003).

The clock was not reset by Morán Vega's vague argument that defendants handled his administrative claim in a

-11-

discriminatory fashion.  The district court correctly concluded that Morán Vega "offered nothing more than conclusory claims of political discrimination" to support this argument and failed even to allege "that he was treated differently" because of his political opinion or that other employees were treated more favorably. See Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) ("Although all inferences must be made in the plaintiffs' favor [when reviewing a ruling on a motion to dismiss], this court need not accept 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996))).

Further, aside from Morán Vega's pending suspension, the only allegedly discriminatory acts to which Morán Vega refers are the fact that the RWA did not acknowledge his initial request, delayed in appointing an examiner, and then appointed a biased examiner.  Even if these actions were discrete discriminatory acts sufficient to restart the limitations period, the most recent -- the appointment of a biased examiner -- occurred in January 2002, more than one year before plaintiffs filed suit.

B.      The Retaliation Theory

Morán Vega also argues that he asserted a retaliation claim which was not time-barred.  The argument is that Morán Vega engaged in protected activity by filing an administrative hearing request and demanding that a biased officer be removed from his

case and that the RWA retaliated with the adverse employment action of delaying resolution of his claim.

This argument also fails. Morán Vega never sought recovery for alleged retaliation in the amended complaint, which sought recovery only for Morán Vega's suspension. The amended complaint was filed well after the alleged protected activity and the alleged adverse employment action. Morán Vega also made no mention of a retaliation claim in the opposition to the motion to dismiss filed by Crespo-Saavedra, Acevedo-Cruz, and Rivera. As we held in <u>Iverson</u> v. <u>City of Boston</u>, 452 F.3d 94, 103 (1st Cir. 2006), Morán Vega's "failure to mention -- let alone adequately to develop" the retaliation theory "in the[] opposition to [defendants'] dispositive motion defeats the[] belated attempt to advance the theory on appeal." <u>Id.</u>

C.      <u>Administrative Tolling Theory</u>

Morán Vega also claims that the district court erred by concluding that the filing of an administrative appeal on December 8, 2001 did not toll the statute of limitations. The argument is that the August 2003 complaint was timely because a final decision on the appeal did not issue until November 2005.[3]

---

[3]    Morán Vega does not challenge the district court's application of <u>Valentín-Almeyda</u> before us. That claim is waived. <u>See</u> <u>McAdams</u> v. <u>Mass. Mut. Life Ins. Co.</u>, 391 F.3d 287, 298 (1st Cir. 2004).

-13-

Because Section 1983 borrows from state law to determine the length of its limitations period, we look to state law for tolling principles. Rodriguez Narvaez v. Nazario, 895 F.2d 38, 41-42 (1st Cir. 1990). The applicable statute in Puerto Rico is Article 1873 of the Civil Code, which provides that "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws. Ann. tit. 31, § 5303. An extrajudicial claim, such as an administrative appeal, must meet three requirements to toll the limitations period:

> The claim must be made by the holder of the substantive right (or his legal representative), . . . it must be addressed to the debtor or passive subject of the right, not to a third party, . . . and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

Rodriguez Narvaez, 895 F.2d at 44 (internal citations omitted); see also generally Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 97-99 (1st Cir. 2004); Cintron v. E.L.A., 127 P.R. Dec. 582 (1990) (holding that an administrative claim will toll the statute of limitations only if there is an identity between the action instituted and the action tolled).

Consequently, an administrative claim will toll the limitations period only if it puts forth an "identical cause[] of action," Benitez-Pons v. Puerto Rico, 136 F.3d 54, 59 (1st Cir.

-14-

1998) (quoting Rodriguez Narvaez, 895 F.2d at 43 (internal quotation marks omitted)), and only if "[t]he relief sought in the extrajudicial claim [is] the same as that later sought in court." Valentín-Almeyda, 447 F.3d at 101; see also Rodriguez Narvaez, 895 F.2d at 46.

Morán Vega's administrative claim does not meet these requirements. The relief Morán Vega sought in his December 8, 2001 administrative filing was reinstatement, not the compensatory or punitive damages which were sought in the August 2003 federal court complaint. Moreover, Morán Vega has not shown that the claims raised in the administrative complaint match the claims, particularly the federal civil rights claims, put forth in the August 2003 complaint. Compare Valentín-Almeyda, 447 F.3d at 101-02 (finding the limitations period tolled in a Title VII case where a plaintiff brought identical claims against identical defendants).

Finally, as the district court noted, even if the December 8 filing succeeded in tolling the limitations period, it would only start a new one-year period on the date of the filing, not the date of the resolution of the claim. See Tokyo Marine & Fire Ins. Co., Ltd. v. Perez & Cia., P.R., 142 F.3d 1, 4 (1st Cir. 1998) ("The prescriptive term is interrupted on the date on which the defendant receives the extrajudicial claim.") (emphasis added). Consequently, the December 8, 2001 filing would only extend the

limitations period one year, leaving any claim filed after December 8, 2002 untimely.

The district court correctly rejected Morán Vega's administrative tolling argument.

The judgment of dismissal is <u>affirmed</u>.